# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO: 1:22-cv-21796-FAM

JOSE BASULTO, an individual, and
BROTHERS TO THE RESCUE, INC. a
Florida not-for-profit corporation,

      Plaintiffs,

v.

NETFLIX, INC., a Delaware corporation,
ORANGE STUDIOS, S.A., a French
anonymous society, OLIVIER
ASSAYAS, an individual, NOSTROMO
PICTURES, SL, a Spanish corporation,
US ONE COMERCIO E SERVICIOS DE
CRIACAO E PRODUCAO DE OBRAS
COM DIREITOS AUTORAIS, LTD, a
Brazilian limited company, CG CINEMA,
SASU, a French simplified joint stock
company, RODRIGO TEXIEIRA, an
individual, CHARLES GILLIBERT, an
individual, and LOURENCO
SANT'ANNA, an individual,

      Defendants.

_____ /

---

## THE FOREIGN DEFENDANTS' AMENDED MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendants Orange Studio, S.A. (incorrectly identified as Orange Studios, S.A.) ("Orange"), Charles Gillibert ("Gillibert"), CG Cinema International (incorrectly identified as CG Cinema SASU) ("CGI"), Rodrigo Teixeira ("Teixeira"), Lourenço Sant'Anna ("Sant'Anna") and US One Comércio e Serviços de Criação e Produção de Obras com Direitos Autorais LTD ("RT Features" and, collectively, the "Foreign Defendants"), move to dismiss Plaintiffs Jose Basulto ("Basulto") and Brothers to the Rescue, Inc.'s ("Brothers" and, together with Basulto, "Plaintiffs") Complaint [D.E. 1] (the "Complaint") as against them for lack of personal jurisdiction (the "Motion").[1]  As explained in the following memorandum of law, the Foreign Defendants did not publish the complained-of film in Florida or otherwise direct any activities towards Florida.  Accordingly, this Court does not have personal jurisdiction over the Foreign Defendants, and the claims against them should be dismissed.

## PRELIMINARY STATEMENT

This is a defamation action concerning the film *Wasp Network* (the "Film") – which Plaintiffs allege contains defamatory portrayals of them – which is available for subscribers to view on the streaming platform of Defendant Netflix, Inc. ("Netflix").  (Compl. ¶ 1.)  Plaintiffs have sued not only Netflix, however, but also the Foreign Defendants, who are credited as producers of the Film, despite the fact that they have no connection to Florida and played no role in the publication of the Film in Florida.  Under Florida law, there is no personal jurisdiction over the Foreign Defendants, and the Complaint should be dismissed as to them.

---

[1] This Motion amends the motion to dismiss for lack of personal jurisdiction filed by the Foreign Defendants on October 20, 2022 [D.E. 25] to include a certificate of good faith conference pursuant to Local Rule 7.1(a)(3) and a hearing request pursuant to Local Rule 7.1(b)(2).  The Motion is otherwise unchanged.

As detailed in the supporting declarations,[2] the Foreign Defendants had no control over the Film being made available for viewing on the Netflix streaming platform, including by viewers in Florida, and no independent connections with Florida.  The Foreign Defendants primarily provided or helped to secure financing for the Film, and in some cases helped to manage the production of the Film.  The Foreign Defendants' activities took place in France and Brazil, where they reside, and in Spain and Cuba, where the Film was shot.  Plaintiffs claim that the Foreign Defendants are subject to personal jurisdiction in this District by alleging, in vague and conclusory terms, that they "participat[ed] in, facilitate[ed] and caus[ed]" the publication of the Film on Netflix's website, which was subsequently accessed in Florida.  (Compl. ¶ 34.)  This theory of personal jurisdiction, however, is foreclosed by the Florida Supreme Court's decision in *Internet Solutions*, 39 So.3d 1201 (Fla. 2010), which held that, when applied to online content, the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(2), reaches *the poster* of allegedly defamatory online content that is subsequently accessed in Florida.  In a case decided just months ago, a court in this District applied *Internet Solutions* to a case with strikingly similar facts to hold that it lacked personal jurisdiction over a *producer* (as opposed to the *poster/publisher*) of an allegedly defamatory television program that was disseminated online by *other defendants*.  That is precisely the situation in this case, and this Court should also dismiss the Complaint as against the Foreign Defendants.

Nor can Plaintiffs circumvent the lack of personal jurisdiction over the Foreign Defendants by resorting to naked allegations of a civil conspiracy.  Plaintiffs' vague and conclusory allegations fall far short of the required specificity for a conspiracy claim, and courts regularly reject attempts

---

[2] *See* Declaration of Charles Gillibert dated October 19, 2022 ("Gillibert Decl."); Declaration of Kristina Zimmermann dated October 19, 2022 ("Zimmermann Decl."); Declaration of Lourenço Sant'Anna dated October 18, 2022 ("Sant'Anna Decl."); Declaration of Rodrigo Teixeira dated October 18, 2022 ("Teixeira Decl.").

to extend jurisdiction over nonresident defendants based on such allegations.

Finally, even if the Foreign Defendants were within the reach of Florida's long-arm statute, due process considerations would preclude the exercise of jurisdiction. The only alleged contact between the Foreign Defendants and Florida is that they received producer credits on the Film, which was allegedly made available on a streaming platform by an unrelated defendant and subsequently viewed in Florida. But Plaintiffs cannot impute the alleged actions of an unrelated entity onto the Foreign Defendants to secure personal jurisdiction over them. Further, none of the Foreign Defendants has any connection to Florida: none of them owns property in Florida, conducts business in Florida or has spent more than *de minimis* time in Florida. Nor did the Foreign Defendants' work on the Film take place in Florida. Under these circumstances, due process prohibits the exercise of jurisdiction.

## BACKGROUND[3]

### A.    The Parties

Plaintiff Basulto is a well-known member of the Cuban exile community in Florida. (Compl. ¶¶ 5, 12 n.8.) Plaintiff Brothers to the Rescue is a Florida not-for-profit organization founded and run by Basulto. (*Id.* ¶¶ 63-64.)

Gillibert is an individual who resides in France. (*Id.* ¶ 30.) He is the Manager of CGI, a

---

[3] These facts are drawn from the Complaint and the declarations submitted by the Foreign Defendants. On a motion to dismiss for lack of personal jurisdiction, "the Court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. If the defendant refutes personal jurisdiction . . . through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own." *Sifonte v. Fonseca*, No. 1:21-cv-20543, 2022 WL 4110705, at *6 (S.D. Fla. Aug. 12, 2022) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)), *report and recommendation adopted*, 2022 WL 4111199 (S.D. Fla. Sept. 8, 2022).

French production company that primarily produces French and European feature films.[4] (Gillibert Decl. ¶ 2; Compl. ¶ 28 (improperly naming CG Cinema, SASU).)  CGI is based in France and has its sole office in Paris, France.  (Gillibert Decl. ¶ 7.)  Orange is a French production company that primarily produces and distributes French and European films and television series. (Zimmermann Decl. ¶ 2; Compl. ¶ 24.)  Orange is based in France and has offices in Paris, France. (Zimmermann Decl. ¶¶ 2-3.)  Teixeira is the president of RT Features, a Brazilian production company that primarily produces feature-length films and television series, and Sant'Anna is an executive producer at RT Features.[5]  (Teixeira Decl. ¶ 2; Sant'Anna Decl. ¶ 2.)  Teixeira and Sant'Anna both reside in São Paulo, Brazil.  (Teixeira Decl. ¶ 5; Sant'Anna Decl. ¶ 5.)[6]  RT Features is based in São Paulo, Brazil and has its sole office in São Paulo, Brazil.  (Teixeira Decl. ¶ 7.)  CGI, Orange and RT Features are producers on the Film.  (Compl. ¶¶ 24, 27, 28.)

**B.    The Film**

Plaintiffs allege that they were defamed by portrayals of their characters in the Film, a docudrama that was made available on the Netflix streaming service.  (Compl. ¶ 1.)  The Film is based on the story of a Cuban spy ring that infiltrated the Cuban exile community in Miami in the 1990s.  (*Id.* ¶ 4.)  The character of Basulto and his organization Brothers are portrayed in the Film because Brothers is one of the Cuban exile organizations that the spies infiltrate.

---

[4] Gillibert had no involvement in his individual capacity in connection with the Film; his only involvement was as a producer on behalf of CGI.  (Gillibert Decl. ¶ 4.)

[5] Neither Teixeira nor Sant'Anna had any involvement in their individual capacities in connection with the Film; their only involvement was on behalf of RT Features. (Teixeira Decl. ¶ 4; Sant'Anna Decl. ¶ 4.)

[6] The Complaint incorrectly alleges that Sant'Anna resides in California.  (Compl. ¶ 31.)  He does not.  (Sant'Anna Decl. ¶ 5.)

## C.      The Foreign Defendants' Roles in the Film and Connection to Florida

Plaintiffs allege that the Foreign Defendants are producers of the Film.  (Compl. ¶¶ 24, 27-31.)  In one conclusory paragraph, Plaintiffs claim that the Foreign Defendants are subject to this Court's jurisdiction because of their role "participating in, facilitating and causing the publication of defamatory content on Netflix's website," which was subsequently accessed in Florida.  (*Id.* ¶ 34.)  The Complaint also alleges that the Foreign Defendants "intended and agreed for the Film to be published and broadcast by Netflix nationally in the United States, including in Florida."  (*Id.* ¶ 37.)  The Complaint does not claim that the Foreign Defendants directly posted, published, broadcast or distributed the Film in Florida.

In fact, as set forth in the supporting declarations, the Foreign Defendants had *no* control over the publication of the Film, let alone its being accessible or accessed in Florida, and had no other connections with Florida.  As a threshold matter, none of the Foreign Defendants owns property in Florida, conducts business in Florida, receives income from Florida, or has spent more than *de minimis* time in Florida. (Gillibert Decl. ¶¶ 5-7; Teixeira Decl. ¶¶ 5, 8; Sant'Anna Decl. ¶ 5; Zimmerman Decl. ¶ 4.)

The primary role of both RT Features and CGI as producers of the Film was to secure financing, including by finding potential co-producers for the Film.  (Teixeira Decl. ¶ 9, Gillibert Decl. ¶ 8.)  One such co-producer was Orange, whose primary role was to contribute financing for the Film and act as an international distributor for the Film in certain territories outside the United States.  (Zimmermann Decl. ¶ 5.)  CGI also assisted in presenting the completed Film to distributors and had a limited role in business negotiations concerning the cast and crew before shooting on the Film began.  (Gillibert Decl. ¶ 8.)  RT Features also helped to oversee production of the Film, chiefly to keep the Film within budget.  (Teixeira Decl. ¶ 10.)  In connection with

those roles, Gillibert (on behalf of CGI) and Teixeira and Sant'Anna (on behalf of RT Features) travelled to Cuba, where some filming took place. (Gillibert Decl. ¶ 6; Teixeira Decl. ¶ 10; Sant'Anna Decl. ¶ 6.)[7]  Teixeira also travelled to Spain while filming took place there. (Teixeira Decl. ¶ 10.)  None of the Film was shot in Florida, and none of the Foreign Defendants travelled to Florida to perform any work in connection with the Film.[8]  (Gillibert Decl. ¶¶ 6, 9; Teixeira Decl. ¶ 10; Zimmermann Decl. ¶ 5.)  Orange had no contacts with Florida whatsoever in connection with the Film. (Zimmermann Decl. ¶ 5.)

Likewise, none of the Foreign Defendants had any role, control or decision-making authority over the distribution or publication of the Film in Florida. (Gillibert Decl. ¶ 10; Teixeira Decl. ¶¶ 11-12; Zimmermann Decl. ¶ 6.)  As producers, Orange and RT Features each owned and controlled certain distribution rights for the Film.  Orange had the rights to certain overseas territories, while RT Features controlled the rights to distribute the Film in the United States. (Teixeira Decl. ¶ 12; Zimmermann Decl. ¶¶ 5-6.)  Orange subsequently licensed to Netflix, on an exclusive basis, the distribution rights to certain overseas territories, along with the U.S. distribution rights held by RT Features.[9]  (Zimmermann Decl. ¶ 6; Teixeira Decl. ¶ 12.)  Once

---

[7] As noted above, although Gillibert, Teixeira and Sant'Anna are credited individually as producers of the Film, the producers were their companies, CGI and RT Features. (Gillibert Decl. ¶ 4; Teixeira Decl. ¶ 4; Sant'Anna Decl. ¶ 4.)  It is customary in the industry to list an individual as the producer, even when the producer is actually the production company with whom that individual is affiliated.  (*Id.*)

[8] Gillibert, Teixeira and Sant'Anna's only travel to Florida was incidental: all three had layovers in Florida while traveling to and from Cuba. (Gillibert Decl. ¶ 6; Teixeira Decl. ¶ 6; Sant'Anna Decl. ¶ 7.)

[9] Neither Orange nor CGI ever owned or controlled the U.S. distribution rights to the Film. (Gillibert Decl. ¶ 10; Zimmermann Decl. ¶ 6.)  Orange acted as an agent for RT Features in negotiating Netflix's exclusive licensing of RT Features' U.S. distribution rights. (Zimmermann Decl. ¶ 6, Teixeira Decl. ¶ 12.)

Netflix licensed the distribution rights for the Film, it alone controlled the distribution of the Film in the United States. None of the Foreign Defendants had any involvement in, control over, or decision-making authority over the distribution or publication of the Film in the United States, including on the Netflix streaming platform, nor did they enter into any agreement to publish the Film in the United States. (Zimmermann Decl. ¶¶ 6-7; Teixeira Decl. ¶¶ 11-12; Gillibert Decl. ¶ 10; Sant'Anna Decl. ¶ 8.)

## ARGUMENT

"Generally, a federal court may properly exercise personal jurisdiction over a non-resident defendant only if two requirements are satisfied: (1) the state long-arm statute, and (2) the Due Process Clause." *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134 (S.D. Fla. 2007).[10] In assessing the reach of the state long-arm statute, "Florida courts 'strictly construe the long-arm statute in favor of the nonresident defendant.'" *Johnson v. Royal Caribbean Cruises Ltd.*, 474 F. Supp. 3d 1260, 1265 (S.D. Fla. 2020) (quoting *Abdo v. Abdo*, 263 So.3d 141, 145 (Fla. 2d DCA 2018)). "[I]f the applicable state statute governing personal jurisdiction is satisfied, the Court must then determine whether sufficient 'minimum contacts' exist to satisfy the due process requirements of the Fourteenth Amendment, which include 'traditional notions of fair play and substantial justice.'" *Mother Doe I*, 632 F. Supp. 2d at 1134 (citation omitted). As discussed below, the claims against the Foreign Defendants should be dismissed because Florida's long-arm statute

---

[10] Plaintiffs do not allege general jurisdiction over the Foreign Defendants, nor could they. "Under the general jurisdiction provision of Florida's long-arm statute, a court has jurisdiction over a 'defendant who is engaged in substantial and not isolated activity within this state…'" *Sifonte*, 2022 WL 4110705, at *7 (quoting Fla. Stat. § 48.193(2)). Florida courts hold "the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are 'so continuous and systematic as to render [the defendant] essentially at home in the forum state.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). It is apparent this standard is not met with regard to the Foreign Defendants.

does not reach them, and in any event, exercising personal jurisdiction over the Foreign Defendants in Florida would not satisfy due process.

I.     **Florida's Long-Arm Statute Does Not Apply to the Foreign Defendants**

This Court does not have personal jurisdiction over the Foreign Defendants because Florida's long-arm statute, Fla. Stat. § 48.193, cannot be satisfied here.  Plaintiffs claim that the Foreign Defendants are subject to the Court's personal jurisdiction under two theories: (1) pursuant to Fla. Stat. § 48.193(1)(a)(2), which permits the exercise of jurisdiction over a nonresident defendant for "committing a tortious act within this state," because of their alleged role "participating in, facilitating and causing the publication of defamatory content on Netflix's website"; and (2) because the Foreign Defendants allegedly conspired to portray Plaintiffs in a defamatory manner by agreeing for Netflix to publish the Film in Florida.  (Compl. ¶ 34.)  Both theories fail.

A.     **The Court Lacks Personal Jurisdiction over the Foreign Defendants for Plaintiffs' Defamation Claims.**

The tortious act the Foreign Defendants allegedly committed within the state of Florida is defamation.  (*Id*.)  The elements of defamation under Florida law are: (1) publication; (2) falsity; (3) that the publisher acted with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or at least negligently on a matter concerning a private person; (4) actual damages; (5) that the statement is defamatory.  *Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1105 (Fla. 2008)).  Thus, for Florida's long-arm statute to reach Defendants under the first theory, as a threshold issue, they must have published the allegedly defamatory statements about Plaintiffs within the state of Florida.

This theory fails because, in the context of speech made accessible online (such as the Film

in this case), a nonresident defendant must *actually post* defamatory content on the Internet to commit a tortious act (*i.e.*, to publish the content) "within this state" for the purposes of Fla. Stat. § 48.193(1)(a)(2).  In 2010, the Florida Supreme Court accepted a certified question from the Eleventh Circuit to address when a nonresident defendant's posting of defamatory content on the Internet constitutes the commission of a tortious act within Florida for purposes of Florida's long-arm statute. *See Internet Sols. Corp. v. Marshall*, 39 So.3d 1201 (Fla. 2010).  In *Internet Solutions*, the Florida Supreme Court held that to be subject to personal jurisdiction in Florida, a nonresident must post defamatory content on the Internet and that content must then be accessed in Florida:

> *By posting allegedly defamatory material on the Web* about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida.  When the posting is then accessed by a third party in Florida, the material has been 'published' in Florida and the poster has communicated the material 'into' Florida, thereby committing the tortious act of defamation within Florida.

*Id.* at 1215 (emphasis added).    Accordingly, to be subject to Florida's long-arm statute for defamation based upon content disseminated online, a party must *actually post* the defamatory content to a website that is accessed in Florida.  *See also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1170 (11th Cir. 2010) (adopting standard set forth by Florida Supreme Court); *Sifonte v. Fonseca*, 2022 WL 4110705, at *8-10 (relying on *Internet Solutions*, finding no personal jurisdiction over television producer who did not post or publish the defamatory allegations at issue on any platform); *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019) ("In Florida, a nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident *by posting those statements on a website*, provided that the website posts containing the statements are accessible in Florida and accessed in Florida."

(emphasis added) (internal quotations omitted)).

Plaintiffs here claim that the Foreign Defendants "participat[ed] in, facilitate[ed] and caus[ed]" the publication of defamatory content on Netflix's website, which was subsequently accessed in Florida.  (Compl. ¶ 34.)  These allegations are insufficient to make out a *prima facie* case for personal jurisdiction because they do not and could not allege that the Foreign Defendants *actually published* the defamatory content.  Even assuming, *arguendo*, that these allegations were sufficient, they are contradicted by the accompanying declarations of the Foreign Defendants (which shifts the burden back to Plaintiffs to raise, through evidence or testimony, a "meritorious challenge" to personal jurisdiction, *see Miller*, 383 F. Supp. 3d at 1370).  As those declarations make clear, the role of the Foreign Defendants was to secure or provide financing for the Film and to provide limited assistance in production – none of the Foreign Defendants participated in, facilitated or caused the Film's publication on the Netflix streaming platform, much less actually made the Film available on the Netflix streaming platform.  (*See* Gillibert Decl. ¶¶ 8, 10; Zimmermann Decl. ¶ 7; Teixeira Decl. ¶¶ 11-12.)  Thus, there is no jurisdiction over the Foreign Defendants under Florida's long-arm statute.

A recent case in this District, *Sifonte v. Fonseca*, is instructive.  In *Fonseca*, a television program containing allegedly defamatory statements was filmed in Puerto Rico and subsequently disseminated online by other defendants, and accessed in Florida.  The producer of the television show at issue claimed that it was not subject to the court's jurisdiction where it did not have any role, control or decision-making authority over the publication of the allegedly defamatory material.  *See Fonseca,* 2022 WL 4110705, at *8-10.  Relying on *Internet Solutions*, the court in *Fonseca* found that the "allegations in the Amended Complaint do not demonstrate that TM Television [the producer] posted or published defamatory allegations on any platform," and

rejected the plaintiffs' attempt to "impute the conduct of other named [d]efendants on TM Television." *Id.* at *10. Thus, the *Fonseca* court held:

> The undersigned finds that ***Plaintiffs' allegations are not sufficient to subject TM television to the jurisdiction of this Court under Florida's long-arm statute***. Rather, Plaintiffs' allegations demonstrate that ***TM Television created or produced two of the television shows that contained allegedly defamatory statements about Plaintiffs*** which were subsequently broadcast and published by Defendants Telemundo of Puerto Rico and Telemundo Network Group on their website and through their mobile application for access anywhere in the world.

*Id.* (emphasis added). Because the producer had created or produced the allegedly defamatory content, but had not published the content, the Court could not exercise jurisdiction over it.

That is exactly the situation in this case. The Foreign Defendants produced the Film containing the allegedly defamatory statements, but had no control over its subsequently being made available on the Netflix streaming platform. Indeed, Plaintiffs admit that only one Defendant, Netflix, actually published the defamatory content at issue. (*See, e.g.*, Compl. ¶¶ 1 ("This defamation action arises from Defendant Netflix, Inc.'s . . . release of [the Film] to its worldwide streaming service on June 19, 2020."), 35 ("Netflix intended to and did publish the Film in Florida. Indeed, Netflix published and broadcast the Film nationally in the United States, including in Florida, on its website, platform and video streaming service.").) Accordingly, Plaintiffs' allegations that the Foreign Defendants "participat[ed] in, facilitate[ed] and caus[ed]" the publication of defamatory content on Netflix's platform are insufficient to establish that they committed a tort "within this state" for the purposes of Florida's long-arm statute. And as the declarations submitted with this Motion establish, the Foreign Defendants, like the producer in *Fonseca*, had no role, control, or decision-making authority over Netflix's making the Film available on its streaming platform, including to subscribers located in Florida. Thus, their conduct

does not bring them within the reach of Florida's long-arm statute.

**B.      Plaintiffs' Assertion of Jurisdiction on the Basis of a Conspiracy to Defame Plaintiffs Also Fails.**

Plaintiffs also fail to establish personal jurisdiction based upon their civil conspiracy claim. A predicate element of any claim for civil conspiracy is "an agreement between two or more parties [] to do an unlawful act or to do a lawful act by unlawful means." *Eagletech Commc'n's, Inc. v. Bryn Mawr Inv. Grp., Inc*., 79 So.3d 855, 863 (Fla. 4th DCA 2012). "[A] claim for civil conspiracy must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston,* 314 So.3d 656, 661 (Fla. 3d DCA 2021); *see also Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *Corbett v. Transport. Sec. Admin.*, 968 F. Supp. 2d 1171, 1191 (S.D. Fla. 2012), *aff'd*, 568 F. App'x 690, 705 n.11 (11th Cir. 2014) (allegations of "collusion" and that defendants "conferred with each other" and shared same "intention" were "too nonspecific and insufficient to sustain any inference that [defendants] reached an agreement to act unlawfully"); *Lloyd v. Hines*, 474 So.2d 376, 378 (Fla. 1st DCA 1985) (dismissing "vague" and "conclusory" allegations of conspiracy).

"A court will decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to *plead with specificity* any *facts* supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *Parisi,* 314 So.3d at 661 (quoting *NHB Advisors, Inc. v. Czyzk*, 95 So.3d 444, 448 (Fla. 4th DCA 2012)) (emphasis added); *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc*., No. 15-24363-CIV, 2016 WL 11501768, at *5 (S.D. Fla. Sept. 14, 2016) ("because [the plaintiff] offers only conclusions and no facts to support the civil conspiracy claim

against URB, the Court cannot impute [another defendant's] Florida acts to URB" to find personal jurisdiction); *Washington v. Fla. Dep't of Children & Families,* 595 F. Supp. 2d 1291, 1295 (M.D. Fla.2009), *report and recommendation adopted*, 2009 WL 10708487 (M.D. Fla. 2009) (allegations that defendants conspired against the plaintiff too vague and conclusory to extend jurisdiction over nonresident defendants); *Abdo*, 263 So.3d at 146 (same).

Here, Plaintiffs' conspiracy allegations are too vague and nonspecific to extend jurisdiction over the Foreign Defendants.  Indeed, Plaintiffs' Complaint contains nothing more than vague, non-specific and conclusory allegations of a "conspiracy to defame" among the Defendants:

- The causes of action arise from Defendants "conspiring to portray Brothers to the Rescue and Mr. Basulto in a false and defamatory manner in [the Film]."  (Compl. ¶ 34.)

- Defendants "agreed for Netflix to publish the Film in Florida."  (*Id.*)

- Defendants "intended and agreed for the Film to be published and broadcast by Netflix nationally in the United States, including in Florida."  (*Id.* ¶ 37.)

- "Defendants conspired together to publish [the Film] which portrays Mr. Basulto in a false and defamatory manner."  (*Id.* ¶ 221.)

- "Defendants further conspired and agreed to purposefully market and aggressively promote [the Film] as a "true" story."  (*Id.* ¶ 222)[11]

- "Each of the Defendants committed overt acts in furtherance of the conspiracy."  (*Id.* ¶ 223.)

These allegations fall far short of the specificity required to allege the existence of a civil conspiracy.  *See Parisi*, 314 So.3d at 662 (vague allegations of an "agreement" to engage in "illegal" act, without alleging with specificity "any facts evidencing *how*" conspiracy took place,

---

[11] Even if the Foreign Defendants had such an agreement concerning the marketing of the Film (they did not), promoting the Film as *based on* a true story is not a tort that could subject the Foreign Defendants to personal jurisdiction in Florida.

insufficient to plead conspiracy) (emphasis in the original).  Here, Plaintiffs fail to identify the nature of the alleged agreement, who the parties to this agreement were, when or where this agreement was made, or precisely what each Foreign Defendant did in furtherance of this alleged conspiracy.  In sum, they speculate that a conspiracy existed because the Film was made available on the Netflix streaming platform, but provide no detail at all to support their claim.  As a matter of law, those allegations are too flimsy and non-specific as to the existence of a civil conspiracy to support jurisdiction over the Foreign Defendants.  *See id.* at 661; *Marjam Supply Co. of Fla., LLC*, 2016 WL 11501768, at *5.

Moreover, these allegations are contradicted by the Foreign Defendants' declarations, all of which confirm the absence of any such conspiratorial "agreement."  As demonstrated in those declarations, CGI had no agreement whatsoever with any other Defendant concerning the publication of the Film on the Netflix streaming platform to subscribers located in Florida. (Gillibert Decl. ¶ 10.)  While Orange licensed U.S. distribution rights in the Film to Netflix on behalf of RT Features, it did not enter into an agreement with Netflix or any other Defendant to publish the Film in the United States, let alone in Florida.  (*See* Zimmermann Decl. ¶¶ 6-7; Teixeira Decl. ¶ 12.)  Likewise, RT Features had no agreement with any other Defendant to publish the Film.  (Teixeira Decl. ¶ 12.)  In sum, the Foreign Defendants did not agree with Netflix or any other Defendant to publish the Film in Florida, and once Netflix acquired the distribution rights, the Foreign Defendants had no control over when, where, how or whether Netflix would publish the Film.  (Gillibert Decl. ¶ 10; Teixeira Decl. ¶¶ 11-12; Zimmermann Decl. ¶ 7.)  Accordingly, given the absence of specific factual allegations supporting Plaintiffs' conspiracy claims, and their inability to allege such a claim in good faith in the face of the declarations submitted by the Foreign Defendants, the Court should decline to extend jurisdiction over the Foreign Defendants.  *See*

*Parisi*, 314 So.3d at 661 (holding vague allegations of conspiracy did not support finding of personal jurisdiction over nonresident defendant); *Washington*, 595 F. Supp. 2d at 1295 (same); *Abdo*, 263 So.3d at 146 (same).

### C. Intentional Infliction of Emotional Distress Claim Fails to Establish Jurisdiction over Foreign Defendants

Although the Complaint does not set forth any basis for jurisdiction in connection with Plaintiffs' intentional infliction of emotional distress ("IIED") claim, the Court lacks jurisdiction over the Foreign Defendants for Plaintiffs' IIED claim for the reasons set forth above because Plaintiffs' IIED claim is based entirely on the allegedly defamatory publication. (*See* Compl. ¶¶ 233-41 (alleging IIED based on the "false and defamatory contents" of the Film)). Moreover, because Plaintiffs' IIED claim is duplicative of Plaintiffs' defamation claims, it fails the threshold inquiry of a personal jurisdiction analysis of determining whether a cause of action exists. S*ee Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002) (where a plaintiff bases personal jurisdiction on the commission of a tortious act within the state, a "threshold question that must be determined is whether the allegations of the complaint state a cause of action"); *Fridovich v. Fridovich*, 598 So.2d 65, 70 (Fla. 1992) (defamation claim "will preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication").

## II. Due Process Prohibits Exercising Personal Jurisdiction over the Foreign Defendants

The Court need not reach the due process question because this more restrictive analysis is undertaken only if personal jurisdiction exists under Florida's long-arm statute – as detailed above, here, it does not. *See Internet Sols.*, 39 So. 3d at 1216. Should the Court reach the due process analysis, however, the claims against the Foreign Defendants should also be dismissed because exercising personal jurisdiction over the Foreign Defendants would not meet constitutional due

process requirements.

To determine whether the exercise of jurisdiction comports with due process, the Eleventh Circuit applies a "three-part test": (1) whether the claims "arise out of or relate to" the defendant's contacts with the forum; (2) whether "defendant purposefully availed itself of the privilege of conducting activities within the forum state"; and (3) whether "the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).  If Plaintiffs fail to establish any prong of this test, then the exercise of personal jurisdiction would violate due process.  *See Carey v. Kirk*, No. 21-20408-CIV, 2022 WL 4594124, at *5 (S.D. Fla. Aug. 4, 2022), *reconsideration denied*, No. 21-20408-CIV, 2022 WL 4594125 (S.D. Fla. Aug. 31, 2022).

All three factors weigh against subjecting the Foreign Defendants to this Court's jurisdiction.  First, Plaintiffs' claims manifestly do not "arise out of or relate to" the Foreign Defendants' contacts with Florida.  As discussed above, none of the Foreign Defendants published the Film in Florida, nor did any of them have any role, control or decision-making authority over its publication in Florida.  And the Complaint alleges no other contacts between the Foreign Defendants and Florida, which is confirmed by the Foreign Defendants' declarations.

Second, the Foreign Defendants did not purposefully avail themselves of conducting activities within Florida.  The Foreign Defendants are individuals (who had no role in the Film whatsoever in their individual capacities and thus should not be named in this suit) and companies residing in France and Brazil.  (Compl. ¶¶ 24, 27-31; Sant'Anna Decl. ¶ 5 (Sant'Anna resides in Brazil, not California); Gillibert Decl. ¶¶ 2, 4; Teixeira Decl. ¶¶ 2, 4, 5; Zimmermann Decl. ¶¶ 2-3.)  None of the Foreign Defendants owns any property in Florida or conducts any business in

Florida.  (Gillibert Decl. ¶¶ 5, 7; Zimmermann Decl. ¶ 4.)  The Foreign Defendants' involvement in the Film occurred almost entirely in France and Brazil, where the Foreign Defendants reside, or in Spain and Cuba, where the Film was shot.  (Gillibert Decl. ¶¶ 7-9; Teixeira Decl. ¶¶ 2, 10; Sant'Anna Decl. ¶¶ 5-7; Zimmermann Decl. ¶ 3.)  The Foreign Defendants had virtually no contact with Florida in connection with the Film.  For instance, Gillibert, Teixeira and Sant'Anna, in their capacity as producers on behalf of CGI and RT Features, had layovers in Florida while traveling to and from production locations in Cuba.  (Gillibert Decl. ¶ 6; Teixeira Decl. ¶ 6; Sant'Anna Decl. ¶ 7.)  But these are precisely the type of "random, fortuitous, or attenuated" contacts that the U.S. Supreme Court has deemed insufficient to establish personal jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

Third, because the Foreign Defendants had no contacts with Florida, they had no expectation of being haled into court there.  Thus, the exercise of personal jurisdiction over them in this case would violate fair play and substantial justice.  *See Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172-MIDDLEBROOKS, 2017 WL 7798664, at *2 (S.D. Fla. Aug. 3, 2017) ("[T]he defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there.").

In circumstances such as these, courts have held that due process is not satisfied.  *See Carey*, 2022 WL 4594124, at *5 (no personal jurisdiction over defendant that did not "purposefully avail itself" of privilege of conducting activities in Florida); *Sovereign Offshore Servs., LLC*, 2017 WL 7798664, at *3 (due process not satisfied where plaintiff did not establish that Defendant intentionally "exploit[ed] a Florida market"); *USA Mgmt. Grp., LLC v. Fitness Publ'ns, Inc.*, No. 14-22477-CIV, 2015 WL 11233075, at *3 (S.D. Fla. Mar. 4, 2015) (finding no jurisdiction; first and third prongs of test were not met where defendant licensed products to another entity to sell

and distribute throughout the United States but had no individual contacts with Florida). Indeed, other courts have found in analogous situations that due process prohibited film producers from being haled into court in any state where the film was distributed or viewed. *See John E. Reid & Assocs., Inc. v. Netflix, Inc.*, No. 19 CV 6781, 2020 WL 1330657, at *4 (N.D. Ill. Mar. 23, 2020) (allegations that defendant produced allegedly defamatory show, without more, insufficient to establish that producer "purposefully availed itself" of conducting business in the forum); *Weller v. Flynn*, 312 F. Supp. 3d 706, 718 (N.D. Ill. 2018) (producers of film distributed in forum state by separate entity lacked minimum contacts for exercise of personal jurisdiction). The same outcome is warranted here, where personal jurisdiction does not lie over the Foreign Defendants.

## CONCLUSION

For the reasons set forth above, the Foreign Defendants respectfully request that the Court grant the Motion and dismiss the claims against the Foreign Defendants pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Foreign Defendants respectfully request an oral argument on their Motion, which they anticipate will necessitate thirty (30) minutes. Due to the number of nonresident defendants, oral argument may assist the Court in streamlining the relevant issues for determination on this Motion.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Counsel for the Foreign Defendants previously understood Local Rule 7.1(a)(3) to exempt motions to dismiss from the requirement for good faith conferral. After reviewing Local Rule 7.1(a)(3), in an abundance of caution, counsel for the Foreign Defendants immediately attempted to confer by email with Plaintiffs' counsel on October 21, 2022 concerning the issues

raised in the Motion, but Plaintiffs' counsel has not responded with Plaintiffs' position.  The

Foreign Defendants hereby file an Amended Motion to Dismiss for Lack of Personal Jurisdiction

which includes this certification of good faith conference.


Dated: October 21, 2022                    Respectfully submitted,

                                           **PRYOR CASHMAN LLP**
                                           255 Alhambra Circle, 8th Floor
                                           Miami, Florida 33134
                                           Telephone: (786) 582-3010
                                           Facsimile:  (786) 582-3004

                                           *s/ James G. Sammataro*
                                           James G. Sammataro
                                           Florida Bar No. 520292
                                           Tom J. Ferber (application *pro hac vice* forthcoming)
                                           Felicity S. Kohn (application *pro hac vice* forthcoming)
                                           jsammataro@pryorcashman.com
                                           tferber@pryorcashman.com
                                           fkohn@pryorcashman.com

                                           *Attorneys for Charles Gillibert, CG Cinema*
                                           *International, Rodrigo Teixeira, Lourenço Sant'Anna,*
                                           *US One Comércio e Serviços de Criação e Produção*
                                           *de Obras com Direitos Autorais LTD, and Orange*
                                           *Studio S.A.*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on October 21, 2022, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send Notices of

Electronic Filing to all counsel of record.


*s/ James G. Sammataro*
James G. Sammataro