UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-21796-Moreno/Goodman

JOSE BASULTO, an individual, and
BROTHERS TO THE RESCUE, INC. a
Florida not-for-profit corporation,

    Plaintiffs,

v.

NETFLIX, INC., a Delaware corporation,
ORANGE STUDIOS, S.A., a French anonymous
society, OLIVIER ASSAYAS, an individual,
NOSTROMO PICTURES, SL, a Spanish
corporation, US ONE COMERCIO
E SERVICIOS DE CRIACAO E PRODUCAO
DE OBRAS COM DIREITOS AUTORAIS, LTD, a
Brazilian limited company, CG CINEMA, SASU,
a French simplified joint stock company, RODRIGO
TEIXEIRA, an individual, CHARLES GILLIBERT,
an individual, and LOURENCO SANT'ANNA, an
individual,

    Defendants.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST NETFLIX, INC.**

Plaintiffs JOSE BASULTO ("Basulto") and BROTHERS TO THE RESCUE, INC. ("Brothers to the Rescue") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file their *Motion for Sanctions against Netflix, Inc.* and, in support thereof, state as follows:

**I.    PRELIMINARY STATEMENT**

On March 2, 2023, Plaintiffs took the deposition of the Corporate Representative of Defendant Netflix, Inc. ("Netflix"), Ms. Kimberly Roque. The Notice of Deposition of the Corporate Representative of Netflix, Inc. (the "Notice of Deposition") containing the Rule

1

30(b)(6) Deposition Topics is attached hereto as Exhibit "1." At the deposition, Ms. Roque was unprepared, unable and unwilling to testify to the following Deposition Topics:

> 1. Your Answer and Affirmative Defenses, including all facts related to the assertions in Your Affirmative Defenses that "Plaintiffs are public figures"[1] and that "the allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words."[2]
>
> \*\*\*
>
> 10. Any information in Netflix's possession, custody or control concerning the accuracy of events depicted in the Film.[3]
>
> 11. Any information in Netflix's possession, custody, or control concerning the accuracy and fairness of the portrayal of Plaintiffs in the Film.
>
> 12. Any due diligence undertaken by Netflix to verify the accuracy of the Film and documents and communications in Netflix's possession, custody or control reflecting due diligence by others to verify the accuracy of the Film.
>
> 13. The October 23, 2020 Pre-suit Demand Letter[4] and any actions taken by Netflix as a result thereof.

*See* Exhibit "1."

---

[1] The statement that "Plaintiffs are public figures" is contained in Netflix's Affirmative Defense No. 2 contained in Netflix's Amended Answer to the Complaint [D.E. 51].

[2] Netflix's contention that "the allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words" is contained in Netflix's Affirmative Defense No. 6 contained in Netflix's Amended Answer to the Complaint [D.E. 51].

[3] As stated in the Notice of Deposition, the "Film" means the film released on Netflix's streaming service and/or platform under the title, "Wasp Network." *See* Ex. 1.

[4] As stated in the Notice of Deposition, the "October 23, 2020 Letter" means the October 23, 2020 Letter sent to Netflix which is attached as Exhibit "1" to Plaintiffs' Complaint and has been filed as Docket Entry 1-1 in this action. As alleged in Plaintiffs' Complaint, counsel to Plaintiffs delivered the October 23, 2020 Letter to Netflix on October 23, 2020. *See* Complaint at ¶123.

As described fully below, Netflix should be precluded from introducing testimony and exhibits at trial or otherwise (including but not limited to summary judgment) as to Deposition Topics 1, 10, 11, 12 & 13. In addition, Netflix Affirmative Defense Nos. 2 & 6 should be stricken.

This case is primarily about whether the Film and its portrayals of Plaintiffs are accurate or inaccurate. However, at deposition Netflix did not take a position on whether the Film and its portrayals of Plaintiffs are accurate or inaccurate. Netflix also testified that it is not in possession of any information regarding the accuracy of the Film or its portrayals of Plaintiffs. This is despite its contentions in its Answer and Affirmative Defenses (D.E. 51.), that the Film and its portrayals of Plaintiffs are accurate. Moreover, Netflix is defending this action on the basis that Plaintiffs are public figures and, therefore, must establish actual malice. While claiming that it lacks knowledge as to the accuracy of the portrayal of Plaintiffs, Netflix received a pre-suit demand letter from Plaintiffs, among other letters received by Netflix, providing Netflix with evidence that the Film falsely depicts Plaintiffs as terrorists, drug traffickers, and involved in a criminal enterprise. Netflix's corporate representative testified that she was unaware of any investigation conducted thereafter by Netflix. After a break called by Netflix's counsel, the witness testified that an investigation was in fact conducted by Netflix. However, the corporate representative did nothing to speak with the people in the same office building that actually conducted the investigation and was unable to answer any questions regarding the substance of the investigation that Netflix conducted. Through the instant Motion, Plaintiffs seek to hold Netflix to its failure to testify as to the Deposition Topics contained in the Notice of Deposition.

## II. THE DEPOSITION OF NETFLIX, INC'S CORPORATE REPRESENTATIVE

1. Kimberly Roque, Esq., Netflix's corporate representative, testified that she never saw the Deposition Topics prior to the deposition. *See* Ex. 2, Transcript of 30(b)(6) deposition of Defendant, Netflix, Inc. (the "Netflix Depo.") at pp. 7:13-25; 8:1-2.

2. Despite the fact that this case is about whether the Film and its portrayals of Plaintiffs is accurate, and that Deposition Topic Nos 1, 10, 11 and 12 concern the accuracy of the Film and its portrayals of Plaintiffs, Ms. Roque would not testify as to whether the content of the Film is accurate. Her repeated testimony was that "Netflix does not have to take a stand on the accuracy of the films it acquires," including the subject Film. *Id*. at pp. 41:6-10; 53:18-25; 54:1-6; 128:10.25.

3. Despite the fact that Netflix contends that Plaintiffs are public figures and that the portrayals of Plaintiffs in the Film are accurate, Ms. Roque testified that Netflix does not have any knowledge of Mr. Basulto or Brothers to the Rescue beyond what is depicted in the Film. *Id*. at pp. 142:10-25; 143:1-25; 144:1-2; 162:1-9.

4. In its Sixth Affirmative Defense, Netflix asserts that "the film and the statements made therein are true or substantially true." *See* Netflix's Affirmative Defense No. 6 contained in Netflix's Amended Answer to the Complaint [D.E. 51]. When asked at deposition for the basis for this assertion, Ms. Roque refused to answer and stated that she "did not prepare to testify as to legal conclusions." Netflix Depo. at 77:1-25; 78:1-25; 79:1-25; 80:1-25. Of course, the basis for Netflix's contention that the Film is true is not a legal conclusion, but is rather a factual premise. When pressed on whether she prepared to testify as to Netflix's position as to whether the Film and the statements made in the film are true or substantially true, Ms. Roque repeated that Netflix does not take a position on the truth or falsity of the Film. *Id*.

5.  The Sixth Affirmative Defense also states "Furthermore, the allegedly false portrayals of plaintiffs are supported as accurate, including by publicly available sources such as court records, newspaper articles and Plaintiff Basulto's own words." At deposition, Ms. Roque could not identify what the publicly available sources, court records, newspaper articles and Basulto's own words referenced in the Sixth Affirmative Defense refer to. *Id*. at 81:1-25. 82:1-25.

6.  Paragraph 2 of the Complaint states, "the film falsely portrays Plaintiffs Brothers to the Rescue and its leader, Mr. Basulto, as terrorists who engage in criminal terrorist acts and other terrorist activity, criminal drug trafficking activity and other criminal activity. These false portrayals have absolutely no basis in fact, and Defendants have always known that the false portrayals of Plaintiffs have no basis in fact." *See* Plaintiffs' Complaint, Docket Entry 1 at ¶2. Netflix denied this allegation in its Answer. See Netflix's Answer at Docket Entry 51. However, at deposition, **Ms. Roque was not able to identify any information to support or refute the accuracy of the portrayal of Plaintiffs Basulto or Brothers to the Rescue in the Film**. Netflix Depo. at pp. 158:11-25: 159:1-25; 160: 1-25; 161:1-25; 162:1-9.

7.  Ms. Roque would not state whether Netflix is in possession of any information that would support a finding that Brothers to the Rescue was ever engaged in criminal activity. *Id*. at p. 171:7-25.

8.  Ms. Roque would not state whether at any point in time Netflix obtained possession of any information that would validate the accuracy of the statement in the Film that Brothers to the Rescue is a militant organization. *Id*. at p. 173:9-25; Plaintiffs' Complaint [D.E. 1] at ¶107(d).

9.  Despite its assertions in its Answer and Affirmative Defenses that the portrayals of Plaintiffs and statements in the Film are true, Ms. Roque testified that Netflix

5

does not take a position on whether Brothers to the Rescue is a militant organization. *Id.* at 174:1-9; 175:7-25; 176:1-17; *See also* Plaintiffs' Complaint [D.E. 1] at ¶107(d); Netflix's Answer [D.E. 51] at ¶107; Netflix's Affirmative Defense No. 6 [D.E. 51] at ¶249 ("(T)he allegedly false portrayals of Plaintiffs in the Film are supported as accurate…").

10. Ms. Roque was also unprepared to testify as to Topic 13, regarding the October 23, 2020 d. At first, Ms. Roque testified that she was not aware whether Netflix conducted an investigation as to the content of the October 23, 2020 Letter. *See* Netflix Depo. at pp. 62:2-25; 63:1.

11. Ms. Roque testified that the reason she was not aware of whether Netflix conducted an investigation is because "it was not in the scope of what I was expected to be asked about." *Id.* at p. 68:9-20. As noted above, the October 23, 2020 Letter and any investigation conducted by Netflix related to the October 23, 2020 is Deposition Topic No. 13.

12. Ms. Roque then testified that she learned during a deposition break that an investigation as to the accuracy of the Film's content occurred following Netflix's receipt of the October 23, 2020 Pre-suit Demand Letter. *Id.* at pp. 69:23-25; 70:1-25; 71:1-25

13. However, Ms. Roque stated that she did not prepare to testify as to anything other than the existence of the investigation. *Id.* at pp. 182:22-25; 182:22-25; 183:1-25; 184:1-10.

14. Ms. Roque would not testify as to the substance or any details of the investigation, such as who conducted the investigation, how it was conducted, what was done to investigate, the results of the investigation, any sources or materials materials referenced as part of the investigation, how long the investigation took, why Netflix elected to conduct the investigation, what the investigation revealed about Basulto, what the investigation revealed about Brothers to the Rescue, whether the investigation revealed as to the depiction of Basulto in the Film is accurate or inaccurate, whether the investigation revealed that the

6

depiction of Brothers to the Rescue is accurate or inaccurate, whether the investigation was done completely in-house, whether Netflix retained any third parties to assist in conducting the investigation, what was looked into, how anything was looked into, etc. *Id*. at pp. 69:23-25; 70:1-25; 71:1-25. 72:1-25; 73:17-22; 83:18-25; 84:1; 84: 2-21; 110:6-25; 111:1-25; 112:1-25; 113:1-25; 114:1-25; 137: 13-25; 138:1-7; 143:15-23.

15. Ms. Roque stated that Mindy Lemoine, of the Netflix "litigation team," would have determined the results of the investigation, but Ms. Roque never talked to Mindy Lemoine to prepare for the deposition. *Id*. at pp. 113:1-25; 114:1-25; 115:1-10

16. The October 23, 2020 Pre-suit Demand letter sent to Netflix and which constitutes Deposition Topic No. 13 references the United States Congressional Findings contained in 22 U.S. Code §6046. *See* Docket Entry 1-1. These Congressional findings include, among other things, the following Findings of Fact:

> (1) Brothers to the Rescue is a Miami-based humanitarian organization engaged in searching for and aiding Cuban refugees in the Straits of Florida, and was engaged in such a mission on Saturday, February 24, 1996.
>
> ***
>
> (3) Statements by the Cuban Government that Brothers to the Rescue has engaged in covert operations, bombing campaigns, and commando operations against the Government of Cuba have no basis in fact.

22 U.S. Code §6046(1) & (3).

17. At deposition, Ms. Roque did not know whether Netflix disputes the above-mentioned Congressional Findings contained in 22 U.S. Code §6046(1) & (3). Netflix Depo. at pp. 151:1-25; 152:1-25; 153:1-25; 154:1-25; 155:1-25. Ms. Roque did not know whether Netflix disputes the Congressional Finding that Plaintiff Brothers to the Rescue, Inc. is a humanitarian organization. *Id*. Ms. Roque did not know whether Netflix disputes the

Congressional Finding that Brothers to the Rescue has not engaged in covert operations, bombing campaigns, and commando operations against the Government of Cuba. *Id.*

### III. ARGUMENT

In *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012) the plaintiff's 30(b)(6) corporate representative did not provide testimony at deposition on certain deposition topics as a result of his failure to adequately prepare, his genuine lack of knowledge, and/or his unwillingness to testify as to the deposition topics. *QBE Ins. Corp.*, 277 F.R.D. 676, 698-699 (S.D. Fla. 2012). As a result, the plaintiff was precluded from taking a position, including the introduction of testimony and exhibits, on deposition topics for which the plaintiff's 30(b)(6) corporate representative was unable to provide testimony. *Id.* at. 699-700. The same result should occur here.

Rule 30(b)(6) provides, in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation ... and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more [persons] who consent to testify on its behalf.... The persons designated must testify about information **known or reasonably available to the organization**.

Fed. R. Civ. P. 30(b)(6).

Rule 30(b)(6) dictates that "[a] corporation has an affirmative duty to provide a witness who is able to provide binding answers on behalf of the corporation." *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). Even though the Rule is not intended to be a "memory contest," the corporation is obligated to make "a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." *QBE Ins.*, 277 F.R.D. at 689 (citing *Great Am. Ins. Co. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008)). A corporation is

expected to fashion a witness or witnesses from "information reasonably available to it," which requires the corporation to "perform a reasonable inquiry for information that is reasonably available to it." *QBE Ins.*, 277 F.R.D. at 689 (internal citations omitted).

The corporate representative does not need to have personal knowledge of the noticed subject matter. *QBE Ins. Corp.*, 277 F.R.D. at 688 (citing *Ecclesiastes,* 497 F.3d at 1147). In addition, "the designating party has a duty to designate more than one deponent if necessary to respond to questions on all relevant areas of inquiry listed in the notice or subpoena." *QBE Ins. Corp.*, 277 F.R.D. at 688 (internal citations omitted). A corporation must prepare its representative(s) to answer questions about the subject matter topics "fully, completely, and unevasively." *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, 310 F.R.D. 683, 685 (S.D. Fla. 2015), *report and recommendation adopted*, 310 F.R.D. 689 (S.D. Fla. 2015). Moreover, the Rule 30(b)(6) witness must provide responsive answers even if the information was transmitted through the corporation's lawyers. *QBE Ins. Corp*, 277 F.R.D. at 688 (citing *Great Am.*, 251 F.R.D. at 542).

A party's noncompliance with its Rule 30(b)(6) obligations can lead to sanctions, such as imposition of costs, preclusion of testimony, and even entry of default. Fed.R.Civ.P. 37; *QBE Ins. Corp.*, 277 F.R.D. at 690; *see also Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015) (discussing the court's inherent power to impose sanctions upon a finding of bad faith in meeting Rule 30(b)(6) obligations). A Rule 30(b)(6) witness who is unable or unwilling to provide responsive answers is "no more present for the deposition than would be a deponent who physically appears for the

deposition but sleeps through it." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 305 (3d Cir. 2000).

Finally, a corporate designee's response expressing a lack of knowledge is an answer that binds the corporation at trial -- and therefore prohibits the corporation from offering evidence at trial expanding on its original answer. *QBE Ins.*, 277 F.R.D. at 690; *Chick-fil-A v. ExxonMobil Corp.*, No. 08-61422, 2009 WL 3763032, at *13 (S.D. Fla. Nov. 10, 2009); *Fraser Yachts Fla., Inc. v. Milne*, No. 05-21168, 2007 WL 1113251, at *3 (S.D. Fla. Apr. 13, 2007).

  A. <u>Deposition Topic 1</u>

Deposition Topic 1 states:

> Your Answer and Affirmative Defenses, including all facts related to the assertions in Your Affirmative Defenses that "Plaintiffs are public figures" and that "the allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words."

*See* Ex. 1.

As described above, Ms. Roque was unable or unwilling to testify as to Deposition Topic 1. *See* Section II *supra* (The Deposition of Netflix, Inc.'s Corporate Representative) at ¶¶2-10. This is particularly true with respect to Affirmative Defense Nos. 2 and 6. With respect to Affirmative Defense No. 2, Netflix contends that Plaintiffs are public figures. *See* D.E. 51. When asked at deposition as to what information Netflix possesses regarding Plaintiffs, Netflix testified that it does not possess any information about Plaintiffs other than what is depicted in the Film. *See* Section II *supra* at ¶3. As such, Netflix should be precluded from taking a position, including the introduction of testimony and exhibits, as to what would make Plaintiffs public figures other than what

10

is depicted in the Film. Further, District Courts have stricken the affirmative defenses of a party whose 30(b)(6) Corporate Representative failed to testify as to the party's affirmative defenses. *See e.g. Estate of Boyles v. Gree USA, Inc.*, 2021 WL 3570413 (M.D. N.C. 2021). A such, this Court should strike Netflix's Affirmative Defense No. 2.

Affirmative Defense No. 6 states, "(T)he allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words." *See* D.E. 51. Netflix's Corporate Representative could not testify at deposition as to any information that would support Netflix's position that the portrayals of Plaintiffs in the Film are accurate. *See* Section II *supra* at ¶¶2-10. Netflix's Corporate Representative also could not identify what publicly available sources, court records, newspaper articles and Plaintiff Basulto's own words are referenced in Affirmative Defense No. 6. *See* Section II *supra* at ¶5. As such, Netflix should be precluded from introducing testimony and other evidence as to its Affirmative Defense No. 6 that the allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words. In addition, this Court should strike Netflix's Affirmative Defense No. 6.

Netflix could also not provide any information to support its contentions in its Answer (via denials) that the portrayals of Plaintiffs as terrorists, drug traffickers and criminals in the Film are true. *See* Section II *supra* at ¶6-9. Similarly, Netflix could not provide any information to support its contentions in its Answer (via denials) that Brothers to the Rescue is a militant organization. *Id*. In fact, when pressed Netflix took the position that it does not take a position on whether Brothers to the Rescue is a militant organization. *Id*. As such, Netflix should be precluded from introducing testimony and other evidence as to its positions

in its Answer that Plaintiffs are terrorists, drug traffickers, and criminals, and that Brothers to the Rescue is a militant organization.

    B.    <u>Deposition Topics 10 & 11</u>

Deposition Topics 10 & 11 states as follows:

> 10. Any information in Netflix's possession, custody or control concerning the accuracy of events depicted in the Film.
>
> 11. Any information in Netflix's possession, custody, or control concerning the accuracy and fairness of the portrayal of Plaintiffs in the Film.

*See* Ex. 1.

As described above, Netflix's Corporate Representative did not provide any information as to the accuracy of the events depicted in the Film or the accuracy and fairness of the portrayal of Plaintiffs in the Film. *See* Section II *supra* at ¶¶2-10. Indeed, Netflix affirmatively took the position that it does not take any position as to the accuracy of the Film. *See* Section II *supra* at ¶2. And again, Netflix conceded that it does not possess any information on Plaintiffs other than the Film. *See* Section II *supra* at ¶3. Netflix also admitted that it is not in possession of any information to support the accuracy of the portrayal of Plaintiffs in the Film. *See* Section II *supra* at ¶6.

As such, Netflix should be precluded from introducing testimony and other evidence as to the accuracy of the events depicted in the Film as well as to the accuracy and fairness of the portrayals of Plaintiffs in the Film.

    C.    <u>Deposition Topics 12 & 13.</u>

Deposition Topics 12 & 13 state as follows:

> 12. Any due diligence undertaken by Netflix to verify the accuracy of the Film and documents and communications

>  in Netflix's possession, custody or control reflecting due diligence by others to verify the accuracy of the Film.
>
> 13. The October 23, 2020 Pre-suit Demand Letter and any actions taken by Netflix as a result thereof.

*See* Ex. 1.

As described above, Netflix undertook a secret investigation as to the content of the October 23, 2020 Pre-suit Demand Letter, but chose to select a corporate representative who did not have personal knowledge of the investigation and was willfully unprepared to testify as to any aspect of the investigation that Netflix conducted as to the veracity of the depictions of Plaintiffs in the Film. *See* Section II *supra* at ¶10-17. The Corporate Representative testified that an investigation was conducted, but was unable or unwilling to testify as to the substance of the investigation or anything other than the existence of the investigation. *See* Section II *supra* at ¶10-17. As such, Netflix should be precluded from introducing testimony or other evidence as to the substance of the investigation or anything other than the existence of the investigation.

Netflix has asserted the attorney work-product privilege as to the substance of the investigation that it conducted regarding the factual accuracy of the depictions of Plaintiffs in the Film. The work-product privilege does not protect materials prepared in the ordinary course of business, such as factual investigations. *Daytona Beach Riverhouse, Inc. v. Chubb Custom Ins. Co.*, 2014 WL 1261022 *4 (M.D. Fla. 2014). And as described above, a Rule 30(b)(6) witness must provide responsive answers even if the information was transmitted through the corporation's lawyers. *QBE Ins. Corp*, 277 F.R.D. at 688 (citing *Great Am.*, 251 F.R.D. at 542). Thus, the work-product privilege does not apply to any factual investigation conducted by Netflix's attorneys regarding the October 23, 2020 Pre-suit Demand Letter. To the extent that the work-product privilege

13

does apply, Netflix should not be permitted to "change its mind" and introduce testimony or other evidence as to the substance of the investigation. As such, this Court should preclude Netflix's introduction of testimony or other evidence as to the substance of the investigation.

In *Stern v. O'Quinn*, 253 F.R.D 773 (S.D. Fla. Aug, 29. 2008), a defamation action, the defendant/publisher asserted the work-product protection over an investigation that it conducted through counsel as to the factual accuracy of the allegedly defamatory statements it was publishing. The court found an implied waiver of the work-product protection because the defendant/publisher asserted defenses that put the investigative materials at issue. *Id.* at 676—680. Similarly here, Netflix's state of mind is at issue through its Second Affirmative Defense. [DE 51 at ¶245] ("Plaintiffs are public figures and so must plead that Defendants acted with actual malice, i.e., that they acted with knowledge of the falsity of the statement at issue or with reckless disregard for the truth. Here, Plaintiffs cannot establish that Netflix's conduct met that heightened legal standard."). As such, what Netflix actually knew during the time it has published the Film will provide evidence as to its state of mind during those times. This goes directly to the issue of actual malice raised by Netflix in its affirmative defense. "Implicit in the holding of [*Stern v. O'Quinn*] is the idea that it is simply not fair to allow a party to wield the work-product protection as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any Achilles heels." *Stern v. O'Quinn*, at 677.

Moreover, at the deposition, Netflix was unable to refute any of the specific facts provided to it in the pre-suit demand letter. For example, Netflix's Corporate

Representative did not know at deposition whether Netflix disputes the Congressional Findings contained in 22 U.S. Code §6046(1) & (3), despite the fact that 22 U.S. Code §6046 is referenced in the October 23, 2020 Pre-suit Demand Letter—the subject of Deposition Topic 13. *See* Section II *supra* at ¶16-17. As such, Netflix should be precluded from introducing testimony or other evidence that it may have learned through its secret investigations that would call into question the congressional findings or any other knowledge imputed on Netflix by virtue of the pre-suit demand letter.

**WHEREFORE**, and for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter an Order:

(i) precluding Netflix from taking a position, including the introduction of testimony and exhibits, at trial or otherwise (including summary judgment) as to Deposition Topics 1, 10, 11, 12 & 13 of the Notice of Deposition – with the caveat that Netflix may testify that it received the October 23, 2020 Pre-suit Demand Letter and conducted an investigation regarding the content of the Letter, but Netflix may not testify as to the substance of the investigation or anything else regarding the investigation;

(ii) striking Netflix's Affirmative Defense Nos. 2 & 6;

(iii) precluding Netflix from taking a position, including the introduction of testimony and exhibits, as to what would make Plaintiffs public figures other than what is depicted in the Film;

(iv) precluding Netflix from introducing testimony and other evidence as to its Affirmative Defense No. 6 that the allegedly false portrayals of Plaintiffs are supported as accurate, including by publicly available sources, such as court records, newspaper articles, and Plaintiff Basulto's own words;

(v) precluding Netflix from introducing testimony and other evidence as to its positions in its Answer that Plaintiffs are terrorists, drug traffickers, and criminals, and that Brothers to the Rescue is a militant organization;

(vi) precluding Netflix from introducing testimony and other evidence as to the accuracy of the events depicted in the Film;

(vii) precluding Netflix from introducing testimony and other evidence as to the accuracy and fairness of the portrayals of Plaintiffs in the Film;

(viii)     precluding Netflix from introducing testimony or other evidence as to the substance of Netflix's investigation of the October 23, 2020 Pre-suit Demand Letter or anything other than the existence of the investigation;

(ix)     precluding Netflix from introducing testimony or other evidence that it disputes the Congressional Findings contained in 22 U.S. Code §6046(1) & (3);

(x)     awarding Plaintiffs their reasonable attorneys' fees incurred in pursuing the instant Motion; and

(xi)     such other and further relief as this Honorable Court deems just and proper.

Dated: March 30, 2023                              Respectfully submitted,

                                             **HIRZEL DREYFUSS & DEMPSEY, PLLC**
*Counsel to Plaintiffs*
121 Alhambra Plaza, Suite 1500
Miami, Florida 33129
Telephone: (305) 615-1617

By: /s/ *Leon F. Hirzel*
      **LEON F. HIRZEL**
      Florida Bar No. 085966
      hirzel@hddlawfirm.com
      **ANDRE DREYFUSS**
      Florida Bar No. 94868
      dreyfuss@hddlawfirm.com

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that counsel for Plaintiffs has conferred with counsel for Netflix regarding the relief requested herein, and Netflix objected to the requested relief.

By: /s/ *Leon F. Hirzel*
      **LEON F. HIRZEL**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed on March 30, 2023, via CM/ECF, which will generate Notices of Electronic Filing to all counsel of record.

By: /s/*Leon F. Hirzel*
      **LEON F. HIRZEL**