UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-21796-CIV-MORENO/GOODMAN

JOSE BASULTO, and BROTHERS TO
THE RESCUE, INC.,

    Plaintiffs,

v.

NETFLIX, INC., et al.,
    Defendants.
_____/

## SUPPLEMENTAL ORDER ON BRIEFING FOR UPCOMING HEARING

The Undersigned will be holding an in-person hearing on Defendant Netflix, Inc.'s summary judgment motion [ECF No. 158] on July 24, 2023. [ECF No. 233]. In order to crystallize some of the issues, each side shall submit an omnibus memorandum answering the following questions **by July 18, 2023**. Each answer may be no longer than one-half of one page, with double-spaced text.

Here are the questions:

1. What caselaw supports (or undermines) Netflix's contention that the comment by Olga Salanueva, Rene Gonzalez's wife, calling Plaintiff Jose Basulto a "terrorist," is a mere statement of *opinion*, and therefore not actionable as a defamation claim?

2. Assuming that both Plaintiffs were public figures or limited purpose public figures, do they remain with that status forever in cases involving the topic for which they were a type of public figure (or does the status lapse or change after the passage of time, and, if there is a lapse or change, what circumstances cause the lapse or modification)?

3. Is Netflix in fact a "media defendant"? If so, then what evidence supports that answer, and, if Netflix is a media defendant, then what consequences arise from that classification in the instant case?

4. Can Plaintiffs proceed with this case if their only damages are non-economic mental/emotional distress damages?

5. What does the caselaw say about whether Netflix can safely rely on a warranty of accuracy (or non-defamatory content) to avoid a finding that it acted with actual malice (for public figure cases) or negligently (for a private figure case) when it did no pre-claim investigation of its own?

6. Is Netflix required to conduct its own investigation into the accuracy of a film it is making available on its streaming platform when it is relying on the film producer's warranty of accuracy but later learns of facts suggesting that the warranty might be incorrect?

7. What impact, if any, does the Cuban Government's cooperation with the film's producers have on generating grounds for a requirement that Netflix should have had doubts about the film's accuracy?

8. Although the Cuban Government cooperated with the film's producers, can it be fairly described as being a "source" of information for the film?

9. Plaintiffs cite cases for the proposition that a defendant has a duty to investigate when it knows of a feud or dispute between the defamation plaintiff and a source of information. Would that doctrine apply here if the Cuban Government was not an information source for the film?

10. Can the Plaintiffs be classified here as not being public figures even if Plaintiffs themselves said that they are public figures? Phrased differently, is a statement by a plaintiff on public figure status binding?

11. Are there ever any circumstances where Netflix could not rely on a representation or warranty of accuracy from an established film licensor?

12. Did Netflix function here as a mere film distributor or did its actions go beyond those of a traditional distributor, such as a movie theatre?

13. If the answer to question 12 is "yes," then what impact, if any, did that have on Netflix's liability for defamation (assuming that the material was, in fact, defamatory to one or both Plaintiffs)?

14. Can the film be described as a docudrama when the press kit says it is "based on a true story"?

15. Can Plaintiff Jose Basulto recover damages for mental anguish and/or emotional distress if he has never seen a doctor or health care practitioner for any ailment related to the alleged mental/emotional conditions?

**DONE AND ORDERED**, in Chambers, in Miami, Florida, on July 6, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record